IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

*ELECTRONICALLY FILED*

**Carl Gatlin and Michael Weiss**             CASE NO. __5:20-cv-174-TBR__

      Plaintiffs,

                                              **COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL**

v.

**DynCorp International LLC**

    Serve:  DynCorp International LLC
            Attn: Legal Department
            1700 Old Meadow Road
            McLean, VA 22102

    Serve:  C T Corporation System
            306 Main St
            Suite 512
            Frankfort, KY 40601

        Defendant.

_____

Come now Plaintiffs, Carl Gatlin and Michael Weiss (together, "Texas Reservists"), through counsel, and file this Complaint against Defendant DynCorp International LLC ("DynCorp") and state herein as follows:

**INTRODUCTION**

1. This is an action raising claims of negligence and gross negligence against DynCorp. The Texas Reservists, while serving with a Texas-based Army Reserve aviation unit, were subjected to Hexavalent Chromium poisoning from the wrongful

conduct of DynCorp. As a result, they now face immediate and long-term health problems caused by Hexavalent Chromium (chromium (VI), a chemical identified as posing the highest level of toxicity to humans by the EPA:

> The respiratory tract is the major target organ for chromium (VI) toxicity, for acute (short-term) and chronic(long-term) inhalation exposures. Shortness of breath, coughing, and wheezing were reported from a case of acute exposure to chromium (VI), while perforations and ulcerations of the septum, bronchitis, decreased pulmonary function, pneumonia, and other respiratory effects have been noted from chronic exposure. Human studies have clearly established that inhaled chromium (VI) is a human carcinogen, resulting in an increased risk of lung cancer. Animal studies have shown chromium (VI) to cause lung tumors via inhalation exposure.

*See, EPA, Chromium Compounds,* https://www.epa.gov/sites/production/files/2016-09/documents/chromium-compounds.pdf

## PARTIES, JURISDICTION AND VENUE

2. Carl Gatlin is a citizen of Conroe, Texas, and in addition to his over sixteen years' service in the military works as for the United States Army Reserve.

3. Michael Weiss is a citizen of El Paso, Texas, and in addition to his over nine years' service in the military works as a law enforcement agent for the State of Texas.

4. Upon information and belief, Defendant DynCorp is a Delaware limited liability company that is a wholly owned subsidiary of DynCorp International, Inc. DynCorp International, Inc. is incorporated in Delaware, maintains its principal place of business in the Commonwealth of Virginia, and was created and functions solely for the accumulation of monetary profit.

5. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Jurisdiction is proper before this Court pursuant to both 28 U S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question), as the torts occurred in whole or in

part within a federal enclave as set forth in the United States Constitution, art. I, § 8, cl. 17.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as DynCorp regularly conducts business in the Western District of Kentucky and is essentially at home in the Western District of Kentucky. The torts at issue also occurred in whole or in part within this District.

8.      All conditions precedent to the maintenance of this suit and the Texas Reservists' claims have occurred or been affirmed.

## Factual Background

9.      DynCorp, a private company, and its operating subsidiaries receive billions of dollars of contracts annually from the taxpayers, including work supporting aviation units of the United States Army and Army Reserve. DynCorp, a self-proclaimed expert in aviation maintenance, assumed responsibility for proper maintenance and repairs of aircraft, including aircraft assigned to the Texas Reservists' unit. This suit arises from one of the projects DynCorp was charged with safely completing - maintenance and repair of Army Reserve helicopters at Fort Campbell, Kentucky, including blasting and repainting after repair. When finished the work, DynCorp was required to ensure that toxic chemicals, including particularly hexavalent chromium, were not let behind to poison the personnel working with and around the helicopters. DynCorp instead directly left behind dangerous levels of these chemicals to injure the Texas Reservists. A final cleanup was not completed until March 2019, when the Texas Reservists learned that previous assurances about the safety of the aircraft they served upon were untrue.

10. Thereafter, the Texas Reservists began to notice the onset of breathing difficulties, which grew progressively worse over time. The Texas Reservists were informed that the white powder in the aircraft was residual abrasive material from the work completed by DynCorp and that it contained hexavalent chromium, a powerful carcinogen and toxin. DynCorp failed in its responsibility to take the proper precautions to contain or clean up the hexavalent chromium, notify the Texas Reservists of its presence, and/or warn of its hazardous health effects.

11. Instead of doing what DynCorp promised and was paid to do, DynCorp managers disregarded and downplayed the extreme danger of wholesale aircraft contamination by hexavalent chromium, a toxic chemical by-product that came from the blasting and painting process that was under DynCorp's control. DynCorp managers knew or should have known about both the contamination and the extreme danger of hexavalent chromium. These acts and omissions caused the Texas Reservists months of unprotected, unknowing, and direct exposure to one of the most potent carcinogens and mutagenic substances known to man, hexavalent chromium.

12. The Texas Reservists have already manifested respiratory and health issues characteristically associated with hexavalent chromium exposure, and the Texas Reservists continue to experience respiratory issues, shortness of breath, and symptoms consistent with the impacts of hexavalent chromium poisoning. The Texas Reservists require ongoing, expensive follow-up health care for the health impacts of these exposures, as well as compensation for the reasonably anticipated manifestations over time.

13. The Texas Reservists never shirked their responsibilities to their families, the State of Texas, or this Nation. The Texas Reservists have consistently gone above and beyond the call of duty for their fellow citizens, year after year, responding to natural disasters and proudly putting themselves on the line in operations to protect their community. They have filed this legal action because they believe that DynCorp, having profited handsomely, should be held accountable for these costs it has imposed on the Texas Reservists, and the burdens should not just be dumped by DynCorp on the Texas Reservists, their families, or the United States taxpayer.

14. Hexavalent chromium is a threat to every major organ in the body. This is because it looks the same as the nutrients sulphate and phosphate and is actively sucked up into cells by carriers that would normally transport these essential nutrients. That is the reason why it is very dangerous for humans to become exposed to even small amounts of hexavalent chromium. The most common cancer that develops following inhalation exposure to hexavalent chromium is lung cancer. Studies have also shown elevations of stomach, brain, GI, prostate, leukemia, lymphoma, urinary track, renal, bladder and bone cancers in worker exposed to hexavalent chromium by inhalation. Generally, these cancers develop with a latency period of about 5 years for the blood cancers up to 15-20 years for the other types of cancers. Hexavalent chromium is also known to cause birth defects during pregnancy and has also been reported to have effects on sperm in experimental animals. Hexavalent chromium is the substance made known by the Erin Brockovich story and movie.

15.     In practical terms, this means that, based upon the best scientific evidence, persons exposed to injurious levels of hexavalent chromium have an expected 1 in 5 cancer rates. Once hexavalent chromium has damaged the body, and in particular at the cellular level, there is no "fix." Instead, vigilant health care and early treatment, if possible, is the only protection that medical science can afford exposed individuals from the anticipated future consequences.

**COUNT I**
**COUNT AGAINST DYNCORP INTERNATIONAL LLC**

**NEGLIGENCE**

16.     The Texas Reservists re-allege and incorporate each allegation contained in Paragraphs 1-15 of this Complaint as if fully set forth herein.

17.     DynCorp's managers undertook to inspect and direct the blasting and re-painting work for conformance with safety practices and procedures and/or otherwise undertook supervision of the same. As a result of these actions, DynCorp is liable to the Texas Reservists under RESTATEMENT (SECOND) OF TORTS § 324A. In the alternative, or jointly, DynCorp knew, or should have known, of the dangers resulting from the remaining toxic substances left behind by DynCorp.

18.     The acts and omissions of DynCorp constitute negligence, in that DynCorp failed to exercise ordinary care in their assumption of the safety and health responsibilities, as well as direct oversight of the work activities that were the responsibility of DynCorp, of the Texas Reservists, and these breaches proximately caused legal injuries to the Texas Reservists. The Texas Reservists suffered a direct impact, as evidenced by the respiratory and other health issues they suffered while operating and working with the contaminated

aircraft, such that DynCorp negligently inflicted personal injuries and emotional distress upon the Texas Reservists for which the Texas Reservists should be compensated.

## COUNT II
## COUNT AGAINST DYNCORP INTERNATIONAL LLC

### GROSS NEGLIGENCE

19. The Texas Reservists re-allege and incorporate each allegation contained in Paragraphs 1-18 of this Complaint as if fully set for herein.

20. The acts and omissions of DynCorp constitute gross neglect, as that term is defined by law. Viewed objectively from the standpoint of DynCorp at the time of the occurrences, the acts and omission of DynCorp involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and DynCorp had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of others. As a result of the gross neglect and legal malice of DynCorp, the Texas Reservists each received harmful exposure to a known carcinogen with serious short-term and long-term effects. Accordingly, the Texas Reservists seek an award of exemplary damages

### COMPENSATORY DAMAGES

21. The Texas Reservists re-allege and incorporate each allegation contained in Paragraphs 1-20 of this Complaint as if fully set for herein.

22. As a direct and proximate result of DynCorp's conduct as described above, the Texas Reservists have incurred or may incur medical and/or lifecare expenses, suffered severe and permanent physical and emotional distress, lost employment opportunities,

and will continue to incur such expenses and physical injuries in the future, all to the damages of the Texas Reservists, which exceeds the jurisdictional minimum of this Court.

25. The acts and omissions of DynCorp's managers, employees, and/or agents caused each of the Texas Reservists to sustain actual damages. The Texas Reservists are entitled to be compensated for the personal injuries and damages the Texas Reservists sustained to the varying degrees each has experienced and will likely experience in the future. The Texas Reservists each sustained physical pain and mental anguish and, in reasonable probability, will continue to suffer physical pain and mental anguish in the future. To varying degrees, the Texas Reservists have suffered and will continue to suffer physical impairment and disfigurement. The Texas Reservists are reasonably expected to sustain a loss of earning capacity before the time of trial and a loss of future wage earning capacity. Because of the nature and severity of the injuries, the Texas Reservists required medical treatment in the past and will, in reasonable probability, require additional medical treatment in the future. Charges for such medical treatment that have been made in the past and those which will in reasonable probability be made in the future have been and will be reasonable charges made necessary by the occurrence in question. As a result of Defendant's conduct, the Texas Reservists have sustained damages in excess of the minimum jurisdictional limits of this Court.

26. Through the unlawful conduct set forth in the preceding paragraphs, Texas Reservists have been physically impacted by the injurious effect of hexavalent chromium to which they were exposed. Unfortunately, the acute effects, and even the ongoing allergenic effects (rashes, inflammatory reactions, and unnatural sensitivity to chromium

present in their day to day exposures) are not the only reasonably anticipated results of the exposures. Given the nature of the unprotected exposures to this toxic chemical occasioned by DynCorp's misconduct, the Texas Reservists face a twenty to thirty times risk of cancers and other harmful health effects, especially with regard to respiratory system (including the nasal airway) cancers. The only medically accepted method of treating this greatly enhanced risk is medical surveillance for the Texas Reservists on an ongoing basis.

27. As a direct and proximate result of the conduct of outlined above, Texas Reservists have suffered physical injuries including but not necessarily limited to acute effects (immune system hypersensitivity, decreased respiratory functioning), and various physical manifestations of emotional distress associated with the injurious exposure.

28. As a direct and proximate result of the conduct of DynCorp outlined above, Texas Reservists have been exposed to greater risks of severe injury and death. Texas Reservists" increased risk of additional and serious injury is a direct and proximate result of DynCorp's liability as set forth above. In the absence of the injurious exposure, the Texas Reservists would not be at the increased risk of additional and serious injury. The Texas Reservists would also not be forced to expend additional monies and incur additional economic damages for appropriate medical monitoring, including at least a biannual CT (computerized axial tomography) scan and sputum pathology screening.

29. As a direct and proximate result o's liability, a medically indicated monitoring regime is reasonably necessary and supported by contemporary scientific principles. As a direct and proximate result of DynCorp's wrongful conduct, the Texas Reservists have

sustained and will continue to sustain direct physical impacts from the injurious exposures, including damaged immune systems and emotional distress and physical manifestations thereof, mental anguish, economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in amounts to be proven at trial, to monitor the health of the Texas Reservists, and to pay or reimburse Texas Reservists for all evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses caused by DynCorp's wrongdoing.

30.    As a result of DynCorp's acts and/or omissions, the Texas Reservists have sustained damages in excess of the minimum jurisdictional limits of this Court.

31.    The Texas Reservists are entitled under law to the recovery of prejudgment interest at the maximum legal rate.

## REQUEST FOR RELIEF

WHEREFORE, the Texas Reservists seek a judgment against DynCorp in an amount to be determined by our jury for compensatory and punitive damages, each of their costs expended herein, trial by jury on all issues so triable; and any and all further legal and equitable relief to which they each may are legally entitled.

   A.   A monetary judgment against  in an amount that will fully compensate the Texas Reservists for their injuries and damages"

   B.   Damages in amounts to be established at trial, including, without limitation, pain and suffering in the past and, within reasonable probability, suffered in the future; mental anguish in the past and, within reasonable probability, suffered in the future; physical impairment in the past and, within reasonable probability, suffered in the future; medical expenses suffered in the past and, within reasonable probability, suffered in the future; lost wages/earning capacity in the past and, within reasonable probability, suffered in

      the future; disfigurement in the past and, within reasonable probability, suffered in the future; and loss of past, present and future enjoyment of life;

C.     A judgment of appropriate punitive damages against Defendant in an amount sufficient to punish the Defendant for its willful, wanton, oppressive, fraudulent, malicious, and/or grossly negligent conduct;

D.     Their costs herein expended, including as available pursuant to CR 3.02, CR 54.04;

E.     Pre-judgment interest;

F.     An award of post-judgment interest in the amount allowed by statute;

G.     Such other and further relief as the Court may deem just and proper; and

H.     Trial by jury of all issues so triable.

I.

Date:  October 26, 2020                    Respectfully Submitted,


                                                  /s/ John Abaray
Tad Thomas
John Abaray
THOMAS LAW OFFICES
9418 North Commons Blvd. Ste. 200
Louisville, KY 40059
PH: (877) 955-7001
Fax: (502) 791-8352
John.Abaray@thomaslawoffices.com
Tad@thomaslawoffices.com


_____
MICHAEL PATRICK DOYLE
*Pro Hac Vice (admission pending)*
Doyle LLP
The Clocktower Building
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: (713) 571-1146
Fax: (713) 571-1148
Email: service@doylelawfirm.com
**Attorneys for Plaintiffs,**
**Carl Gatlin and Michael Weiss**